UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LARRY JOE DAVIS, JR.,

        Plaintiff,

vs.                                    Case No. 8:10-cv-2352-T-27TBM

AVVO, INC. d/b/a Avvo.com,

        Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Transfer Venue (Dkt. 15), Defendant's Renewed Motion to Transfer Venue (Dkt. 32), Plaintiff's responses (Dkts. 24, 37), and various related declarations (Dkts. 16, 17, 19, 20).

### *Introduction*

Plaintiff Larry Joe Davis, Jr. ("Davis") asserts claims against Defendant Avvo, Inc. d/b/a Avvo.com ("Avvo.com") for (1) False Advertising under Section 817.41, Florida Statutes, (2) Unauthorized Use of Likeness under Section 540.08, Florida Statutes, and (3) Violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") under Section 501.204, Florida Statutes. Third Amended Complaint (Dkt. 26).[1] Avvo.com moves to transfer this matter to the

---

[1] Davis filed his first two complaints in state court prior to Avvo.com's timely removal of this action. The original complaint contains detailed allegations relating to Davis' frustration with the Avvo.com rating system for attorneys and its failure to give what he views as appropriate recognition to his status as Board Certified in Health Law. The original complaint asserted claims against Avvo.com for libel, libel by omission, unauthorized use of likeness, and unlawful practices. The amended complaint asserted claims for invasion of privacy (portrayal of plaintiff in a false light), false advertising, unauthorized use of likeness, and unlawful practices.

Western District of Washington under 28 U.S.C. § 1404(a) based on a forum selection clause that purportedly requires Davis' claims to be litigated only in King County, Washington.[2]

Because Davis' claims are within the scope of a valid forum selection clause, and because Davis has failed to demonstrate that the forum selection clause is unenforceable or that the transfer of this action would otherwise be improper, Avvo.com's motions to transfer venue are due to be granted.

## *Factual Background*

Davis is an attorney licensed to practice law in Florida. At all relevant times, Davis was also Board Certified in Health Law by the Florida Bar. Avvo.com is a website that collects and displays publicly available information about attorneys from state bar associations and websites, including years of experience and disciplinary sanctions, and then rates attorneys in three basic areas: experience, industry recognition, and professional conduct. Attorneys may review their profiles, correct and revise their profiles, and submit peer endorsements.

Davis alleges that his profile on Avvo.com contained incorrect information, including his business address, practice area, and qualifications (*e.g.*, the profile did not indicate that Davis was Board Certified in Health Law). Davis also alleges that Avvo.com published his photo on the website without his authorization.

Davis first became aware of his Avvo.com profile and the erroneous content on or about August 17, 2010. Shortly thereafter, Davis visited the Avvo.com website and proceeded to designate a password, log on to his profile page, and attempt to correct the erroneous information. Davis

---

[2] Avvo.com has also filed a motion to dismiss Davis' claims together with a motion to strike various allegations in the Third Amended Complaint (Dkts. 30, 31).

subsequently removed the incorrect and unauthorized information from his profile. After editing his profile, Davis remained unsatisfied with his rating and requested that Avvo.com remove his profile and rating from its website.

Avvo.com argues that access to and the use of its website is governed by Terms and Conditions of Use (the "Terms"), including the following forum selection clause:

> **20. Applicable Law and Venue**
>
> * * * * *
>
> You agree that with respect to any disputes or claims not subject to arbitration (as set forth below),[3] ***any action at law or in equity arising out of or relating to the Site or these Site Terms*** shall be filed only in the state and federal courts located in King County, Washington and you hereby irrevocably and unconditionally consent and submit to the exclusive jurisdiction of such courts.

Declaration of Joshua King (Dkt. 17), Ex. I at ¶ 20 (emphasis added).

## *Discussion*

Pursuant to 28 U.S.C. § 1404(a), a district court has authority to transfer an action to another division or district where it might have been brought for the convenience of parties and witnesses and for the interests of justice.[4] "Under Section 1404(a), the court should consider the convenience of parties and witnesses and the interest of justice, with a choice of forum clause a significant factor that figures centrally in the district court's calculus." *P&S Business Machines, Inc. v. Canon USA,*

---

[3] With respect to arbitration, the Terms generally provide that except for claims relating to user conduct and intellectual property claims, "any controversy or claim arising out of or relating in any way to these Site Terms, or breach thereof, to the Site and/or the Services shall be settled exclusively by arbitration administered by the American Arbitration Association ... ." Declaration of Joshua King (Dkt. 17), Ex. I at ¶ 21. Avvo.com has not moved to compel arbitration.

[4] While a removing defendant in a diversity case cannot move to transfer for improper venue under 28 U.S.C. § 1406, such a defendant does not waive its right to challenge venue based on a forum selection clause via a motion to transfer under 28 U.S.C. § 1404(a). *See, e.g., Hollis v. Florida State University*, 259 F.3d 1295, 1300 (11th Cir. 2001).

*Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citations and quotations omitted). "Thus, while other factors might conceivably militate against a transfer ... the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." *Id.* (citations omitted). As a result, when a motion under 28 U.S.C. § 1404(a) seeks to enforce a valid, reasonable choice of forum clause, the opposing party bears the burden of demonstrating that the contractual forum is sufficiently inconvenient to justify retention of the dispute. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

Before determining whether to enforce the forum selection clause and transfer this action pursuant to 28 U.S.C. § 1404(a), the Court must first determine if the forum selection clause is valid (*i.e.*, enforceable) and whether Davis' claims fall within the scope of the forum selection clause.[5] As discussed below, the forum selection clause is enforceable against Davis and his claims fall within the scope of the forum selection clause.

### *Enforceability of the Forum Selection Clause*

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (internal quotation omitted).[6] Forum selection clauses are unreasonable, and thus unenforceable, only when: "(1) their formation was induced by fraud or overreaching; (2) the plaintiff would effectively be deprived of his or her day in court because of the

---

[5] If enforceable, the forum selection clause is mandatory in that it provides that suit "shall be filed only in" Washington. *See Global Satellite Comm'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004).

[6] "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law." *Id. P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citation omitted). "The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *Id.* (citation omitted).

inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998). For each category, the complaining party bears a heavy burden of demonstrating unreasonableness. *Bremen,* 407 U.S. at 15 ("[T]he forum clause should control absent a strong showing that it should be set aside."); *see Carnival Cruse Lines v. Shute*, 499 U.S. 585, 592 (1991) ("The party claiming [unfairness] should bear a heavy burden of proof.").

Under the usual rules governing the enforcement of contracts in general, the Terms and the forum selection clause would ordinarily constitute a valid and enforceable contract between a registered user and Avvo.com. In registering as a new user on Avvo.com, an individual must affirmatively accept the Terms and "understand[s] and agree[s] that by clicking 'Accepting terms and continue' [they are] indicating that [they] have read and accept the Avvo Terms of Use." Declaration of Joshua King (Dkt. 9), Ex. 7. Such agreements have been routinely upheld by circuit and district courts. *See, e.g., Specht v. Netscape Comm. Corp.*, 306 F.3d 17, 22 n.4 (2d Cir. 2002); *A.V. v. iParadigms, LLC*, 544 F.Supp.2d 473, 480 (E.D. Va. 2008); *DeJohn v. The TV Corp. Int'l*, 245 F.Supp.2d 913, 921 (N.D. Ill. 2003); *Burcham v. Expedia, Inc.*, No. 4:07CV1963, 2009 WL 586513, at *2-3 (E.D. Mo. March 6, 2009); *cf. Hines v. Overstock.com, Inc.*, 668 F.Supp.2d 362, 366-67 (E.D.N.Y. 2009) (finding forum selection clause unenforceable when website did not prompt plaintiff to review terms and conditions and a link to terms and conditions was not prominently displayed). Davis does not dispute that he registered as a user on the Avvo.com website.

Davis alleges that the forum selection clause is unenforceable under the facts of this case because "the Terms of Use are unenforceable under these circumstances, either due to duress,

mistake, procurement of contract by illegality, fraud in the inducement, unconscionability, unclean hands, or other theories ... ." Third Amended Complaint (Dkt. 26), ¶ 26. In essence, Davis argues that by publishing an inaccurate profile Avvo.com coerces or tricks individual attorneys (himself included) into joining Avvo.com and implicitly consenting to the Terms (*i.e.*, but for Avvo.com's allegedly actionable and illegal activities, he would never had logged on to the Avvo.com website).[7]

Davis has failed to show that the formation of the forum selection clause was induced by fraud or overreaching. Davis' conclusory allegation that his consent to the Terms was procured by duress, mistake, or fraud is insufficient to warrant that the Court disregard the forum selection clause.[8] Moreover, Davis does not allege that the forum selection clause itself was procured by improper means. *See Scherk v. Alberta Culver Co.*, 417 U.S. 506, 519 n. 14 (1974) (noting that a "forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion"); *Lipcon*, 148 F.3d at 1296 ("By requiring the plaintiff specifically to allege that the choice clause itself is unenforceable, courts may ensure that more general claims of fraud will be litigated *in the chosen forum*, in accordance with the contractual expectations of the parties."). The allegations and undisputed facts reveal that Davis voluntarily

---

[7] Davis alleges that the "Contact Us" page on Avvo.com provides an email link or form, but not a phone number for correcting listing mistakes. As such, Davis argues that "[t]he only viable choice Avvo.com leaves to mislisted lawyers who are immediately concerned with their mislisted information is to log-in and correct a mislisting immediately." Third Amended Complaint (Dkt. 26), ¶ 41.

[8] The declarations submitted by Davis (Dkts. 19 and 20) contain no facts that would warrant a finding that Davis' consent to the forum selection clause was procured by fraud, mistake, duress, or other improper conduct by Avvo.com.

assented to the Terms and the forum selection clause by logging into his Avvo.com profile and taking affirmative steps to use the Avvo.com service.[9]

Similarly, Davis has failed to show that his assent to the Terms was the result of overreaching by Avvo.com or that the Terms constituted a contract of adhesion. "Absent evidence of a bad-faith motive, disparity in bargaining power does not render a forum selection clause fundamentally unfair." *Garrett v. Gulf Stream Coach, Inc.*, No. 3:08cv792, 2009 WL 936297, at *4 (E.D. Va. April 7, 2009) (citing *Carnival Cruse Lines v. Shute*, 499 U.S. 585, 595 (1991)). Moreover, contrary to Davis' argument that he was essentially compelled to join Avvo.com, the fact that Davis filed this action (and/or could have pursued preliminary injunctive relief) demonstrates that he had a very real alternative to accepting the Terms and forum selection clause. The fact that Davis was an attorney also undercuts his contention that he was somehow tricked or compelled into signing onto Avvo.com and agreeing to the Terms.

Davis also contends that the Terms are unenforceable because they would deprive him of a remedy under the FDUTPA.[10] While Davis claims that the comparable Washington Consumer Protection Act, R.C.W. 1986.010, *et seq.* ("WCPA"), is more restrictive than the FDUTPA, Davis fails to identify in what way the WCPA is purportedly more restrictive or what remedy he would be deprived of if he was forced to pursue his claims under the WCPA instead of the FDUTPA.

---

[9] While Davis argues in his opposition to the motion to transfer that he has repudiated the Terms, Davis has offered no evidence to support this position and the Third Amended Complaint does not specifically seek to rescind the Terms. In contrast, Avvo.com has presented evidence that despite engaging in various communications with Avvo.com, Davis did not repudiate, or attempt to repudiate, the Terms. Declaration of Joshua King (Dkt. 16), ¶ 9.

[10] This argument does not directly relate to the validity of the choice of forum provision in the Terms, but rather to a separate choice of law provision requiring application of Washington law.

Despite the existence of a choice of law clause requiring the application of Washington law, it is not clear that a federal court sitting in Washington would apply the WCPA rather than the FDUTPA. Washington and Florida courts review the enforceability of choice of law provisions under a standard similar to that set forth in Section 187 of the Restatement (Second) of Conflict of Laws (*i.e.*, whether a choice of law clause would violate the public policy of the state with the materially greater interest). *See, e.g., In re DirecTV Early Cancellation Litigation*, 738 F.Supp.2d 1062, 1088-90 (C.D. Cal. 2010). Moreover, the WCPA and the FDUTPA are substantially similar and it is unlikely that Davis could not pursue a claim under the WCPA that he could have pursued under the FDUTPA. *Compare* Fla. Stat. § 501.204(1) (prohibiting "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce") *with* R.C.W. 19.86.020 (prohibiting "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce").[11] Even if a Washington court would apply the WCPA to Davis' claims, and assuming that the WCPA is more restrictive than the FDUTPA, the mere enforcement of the forum selection clause would not be unfair or deprive Davis of his day in court.[12]

Finally, there is no evidence that requiring Davis to litigate in a federal court in Washington would be unfair or so inconvenient as to effectively deprive him of a remedy. Similarly, there is no overriding public policy that would support not enforcing the forum selection clause. In short, Davis

---

[11] Both statutes are to be liberally construed. Fla. Stat. § 501.202; R.C.W. 19.86.920.

[12] Unlike the facts in *Holt v. O'Brien Imports of Ft. Myers, Inc.*, 862 So.2d 87 (Fla. 2d DCA 2003), where the court found an arbitration provision unenforceable when it precluded the plaintiff from obtaining injunctive relief and attorney's fees under the FDUTPA, Davis has not identified a single remedy that would be available under the FDUTPA and not the WCPA. In fact, unlike the FDUTPA, the WCPA allows individuals to recover discretionary treble damages. R.C.W. 19.86.090. The WCPA also allows a successful plaintiff to obtain injunctive relief and recover actual damages, costs, and a reasonable attorney's fee. *Id.*

has not demonstrated that any of the four situations that might render the forum selection clause unenforceable exists in this case.

### *Scope and Applicability of the Forum Selection Clause*

Davis first argues that his claims as pled in the Third Amended Complaint are outside the scope of the forum selection clause because he "is not relying on events which occurred after he logged-in to the Avvo.com site." Davis alleges: "Pursuant to the well-pleaded complaint rule, Plaintiff specifically disavows, *at this time*, reliance on any fact which occurred after Plaintiff logged on to the Avvo.com site (August 17, 2010)." Third Amended Complaint (Dkt. 26), ¶ 26 (emphasis added). Thus, according to Davis, "[a]ll claims in this action accrued prior to this arguable 'start date' of the Terms of Use [and, a]s such, the Terms of Use are not applicable to any aspect of this action." *Id.* The Court disagrees.

As an initial matter, the allegations in Davis' first two complaints demonstrate that the driving force behind this litigation was Davis' frustration with the Avvo.com rating system and Avvo.com's refusal to remove Davis' profile and rating from the website, which Davis requested after he had assented to the Terms and edited his profile. As noted by Avvo.com, Davis' purported "disavowal" of certain time frames does not alter the facts that allegedly gave rise to his alleged injury, *i.e.*, incorrect business address, inaccurate practice area, and unauthorized photo. Moreover, Davis should not be allowed to recast his claims from time to time in a manner designed to circumvent an otherwise enforceable forum selection clause. *See also Simpson v. FWM Laboratories, Inc.*, No. 09-61771-CIV, 2010 WL 1257714 (S.D. Fla. March 29, 2010) (applying choice of law clause in terms of sale to claims based on false advertisements that were viewed by plaintiff prior to actual sale). This conclusion is buttressed by the limited nature of Davis' alleged

9

disavowal. Third Amended Complaint (Dkt. 26), ¶ 26 (disavowing reliance on certain facts "at this time").[13]

Davis also appears to argue that because his claims are based on fraud and other improper conduct they fall outside the scope of the forum selection clause. This argument is belied by the broad scope of the forum selection clause which applies to "any action at law or in equity arising out of or relating to the Site or these Site Terms." Davis cannot dispute that his claims arise out of or relate to the Site or the Terms. In fact, all of Davis' claims relate to the operation and content of the Avvo.com website. Courts have consistently enforced forum selection clauses in cases where plaintiffs asserted claims similar to those asserted by Davis. *See, e.g., Slater v. Energy Services Group Int'l, Inc.*, 634 F.3d 1326, 1332-33 (11th Cir. 2011) (affirming dismissal of claims under Title VII, Florida Civil Rights Act, and Florida Whistleblower Act based on forum selection clause); *Exceptional Urgent Care Center I, Inc. v. Protomed Medical Management Corp.*, No. 5:08-cv-284-Oc-10GRJ, 2009 WL 2151181, at *1-2 (M.D. Fla. July 13, 2009) (transferring FDUTPA claim based on forum selection clause); *Universal Grading Service v. eBay, Inc.*, No. 08-cv-3557 (CPS), 2009 WL 2029796, at *14-15 (E.D.N.Y. June 10, 2009) (while antitrust and trade libel claims did not arise out of the user agreement, those claims did arise out of the defendant's services so as to fall within

---

[13] Davis argument that consumers in Florida who were listed on the Avvo.com website and allegedly had their likenesses misappropriated were not subject to the Terms merely by viewing or being affected adversely by viewing the website is misplaced. Unlike consumers who merely may have viewed the website, Davis went a step further and expressly agreed to the Terms as a condition of accessing the website. The Court rejects Davis' contention that his purported ability to bring claims on behalf of other Florida consumers by standing in the shoes of the Florida Attorney General somehow relieves him from complying with the forum selection clause. Davis' reliance on *True Beginnings, LLC v. Spark Network Services*, 631 F.Supp.2d 849 (N.D. Tex. 2009), is misplaced. Davis' conduct in this case goes well beyond the limited pre-suit investigation conducted by the attorney for the patent assignee in *True Beginnings*. Moreover, the applicable scope of the forum selection clause and Terms in this case are much broader than the terms in *True Beginnings* that were held applicable only to the use of the website's relationship and dating services. *Id.* at 854-55 (noting that plaintiff could have drafted the terms to expressly cover any "access" or "viewing" of its website, but failed to do so).

the scope of a forum selection clause); *SAI Ins. Agency, Inc. v. Applied Systems, Inc.*, 858 So.2d 401, 404 (Fla. 1st DCA 2003) (forum selection clause applied to FDUTPA claim).[14]

### *Transfer Based on Forum Selection Clause*

As his claims are within the scope of an enforceable forum selection clause, Davis bears the burden of demonstrating that the contractual forum is sufficiently inconvenient to justify retention of the dispute. *In re Ricoh Corp.*, 870 F.2d at 573. Davis has failed to meet this burden. Davis argues that Florida attorneys and "potential client" witnesses would be inconvenienced by having to travel to Washington to pursue their claims. However, Davis has offered no evidence supporting this argument and the mere fact that Davis may be required to pursue his claims in Washington is not sufficient to deny a motion to transfer. *See, e.g., P&S Business Machines, Inc.*, 331 F.3d at 806-07; *XR Co. v. Block & Balestri, P.C.*, 44 F.Supp.2d 1296, 1300 (S.D. Fla. 1999). Avvo.com, on the

---

[14] The case law relied on by Davis is inapposite. In *Thunder Marine, Inc.*, the party seeking to enforce the forum selection clause was not a party to the agreements containing the clauses and the plaintiff's claims did not relate to the existing agreements (governing the sale of marine products) but rather related to an entirely new business venture (the purchase of real estate). *See Thunder Marine, Inc. v. Brunswick Corp.*, 8:06-CV-384-T17 EAJ, 2006 U.S. Dist. LEXIS 45949, at *21-22 (M.D. Fla. July 6, 2006). The remaining cases cited by Davis do not involve the enforceability of a forum selection clause. In *Sewell*, the court considered whether contractual disclaimers barred a claim for FDUTPA when parol evidence may have been admissible to establish reasonable reliance by plaintiffs notwithstanding the disclaimers. *See Sewell v. D'Allessandro & Woodyard*, 655 F.Supp.2d 1228, 1259 (M.D. Fla. 2009), *amended on reconsideration by*, 709 F.Supp.2d 1251 (M.D. Fla. 2010), *amended in part and vacated in part by*, 725 F.Supp.2d 1344 (M.D. Fla. 2010). Similarly, in *Siever*, the court denied a motion for summary judgment when conflicting evidence created a genuine issue of material fact as to alleged representations even though the defendants' conduct may not have violated the express terms of the parties' agreements. *See Siever v. BwGaskets, Inc.*, 669 F.Supp.2d 1286, 1293 (M.D. Fla. 2009). Finally, the *Sanchez* decision simply states the general rule that Florida law allows for rescission in a fraudulent inducement case before determining that the plaintiff was not entitled to rescission under the facts of that case. *See Government of Aruba v. Sanchez*, 216 F.Supp.2d 1320, 1365-55 (S.D. Fla. 2002). Moreover, in relying on those cases, Davis fails to address the fact that a forum selection clause may be enforced even when a plaintiff expressly pleads a claim for fraud in the inducement. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974); *MoneyGram Payment Systems, Inc. v. Consorcio Oriental, S.A.*, 65 Fed. Appx. 844 (3d Cir. 2003); *see also Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 WL 4279842, at *4 (W.D. Pa. Sept. 16, 2008) ("allegations of general fraud and/or misrepresentations with respect to [d]efendants' provision ... of services, while well-pled and troubling ..., do not, without more, invalidate the forum selection clause").

other hand, has provided a sufficient basis to support a finding that litigating the case in Washington would be reasonable, fair, and not unduly inconvenient for Davis.[15]

Even absent a forum selection clause, a majority of the factors considered by the Court in ruling on a motion to transfer under 28 U.S.C. § 1404(a) support the transfer of this action to the Western District of Washington.[16] Davis' claims are based on actions allegedly taken by Avvo.com, a business located in Washington, that runs the website in question in Washington. *See Krause v. Chippas*, No. 3:07-cv-0615-L, 2007 WL 4563471 (N.D. Tex. Dec. 28, 2007) (enforcing forum selection clause contained in website's terms of use; transferring claims for fraud, conversion, deceptive trade practices, and violations of securities law).

### *Conclusion*

While Davis proffers various reasons why the Court should refuse to enforce the forum selection clause, this case does not present the type of "exceptional" situation in which judicial enforcement of a contractual choice of forum clause would be improper. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring).

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Transfer Venue (Dkt. 15) and Defendant's Renewed Motion to Transfer Venue (Dkt. 32) are **GRANTED**.

---

[15] Davis also argues that Florida attorneys would be adversely affected if unable to pursue their claims under the FDUTPA. The Court previously addressed this argument when discussing the enforceability of the forum selection clause.

[16] In addition to the existence of a forum selection clause, courts also consider the following factors when determining whether the convenience of the parties warrants transfer in the interest of justice: (1) the relative ease of access to sources of proof, (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses, (4) all other practical problems that make trial of a case easy, expeditious and inexpensive, (5) the administrative difficulties flowing from court congestion, (6) the local interest in having localized interests decided at home, (7) the familiarity of the forum with the law that will govern the case, and (8) the avoidance of unnecessary problems of conflicts of laws of the application of foreign law. *See, e.g., In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).

The Clerk is directed to **TRANSFER** this action to the Western District of Washington. The Clerk is further directed to **TERMINATE** all pending motions and **CLOSE** this case.

**DONE AND ORDERED** in chambers this 12th day of September, 2011.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties